UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| SHARE CORPORATION,<br>　　　Plaintiff,<br><br>v.<br><br>MOMAR, INC.,<br>RICHARD ARENSBERG,<br>FRED BAYER, TED BERGER,<br>WENDY BUTTREY, STEPHEN KUTI<br>ROD MILLER,<br>LAWRENCE SMITH and IRA WOREN<br>　　　Defendants. | §<br>§<br>§<br>§ CIVIL ACTION NO.:<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Share Corporation ("Share" or "the Company"), by its attorneys, files this Original Complaint against Defendants Momar, Inc. ("Momar"), Richard Arensberg ("Arensberg"), Fred Bayer ("Bayer"), Ted Berger ("Berger"), Wendy Buttrey ("Buttrey"), Stephen Kuti ("Kuti"), Rod Miller ("Miller"), Lawrence Smith ("Smith") and Ira Woren ("Woren") for injunctive relief and damages, and states and alleges as follows:

### PARTIES

1. Plaintiff Share Corporation is a Wisconsin corporation with its principal place of business and headquarters located in Milwaukee, Wisconsin. For purposes of diversity jurisdiction, Share Corporation is a citizen of the State of Wisconsin, and no other State.

2. Defendant Momar, Inc. is a Georgia corporation with its principal place of business and headquarters located in Atlanta, Georgia. Momar conducts business in Wisconsin, and it has affiliated with and/or employed sales managers and representatives such as the Defendants in Wisconsin. For purposes of diversity jurisdiction, Momar is a citizen of the State

of Georgia, and no other State. Momar may be served with process by serving its President, Julian Mohr, at Momar, Inc., 1830 Ellsworth Industrial Drive NW, Atlanta, GA 30318-3746.

3. Defendant Richard Arensberg is an individual residing in Albany, New York. Arensberg previously served as an Area Manager for Share, and is now employed by and/or associated with defendant Momar, a direct competitor of Share. For purposes of diversity jurisdiction, Arsenberg is a citizen of the State of New York, and no other State. Arensberg may be served with process at 1700 Western Ave., #106, Albany, NY 12203.

4. Defendant Fred Bayer is an individual residing in Winston Salem, North Carolina, who previously served as a Sales Representative for Share and who is now employed by and/or associated with Defendant Momar, a direct competitor of Share. For purposes of diversity jurisdiction, Bayer is a citizen of the State of North Carolina, and no other State. Bayer may be served with process at 4147 Grossman Court, Winston Salem, NC 27104.

5. Defendant Ted Berger is an individual residing in Greensboro, North Carolina, who previously served as a Manager for Share, and who is now employed by and/or associated with defendant Momar, a direct competitor of Share. For purposes of diversity jurisdiction, Berger is a citizen of the State of North Carolina, and no other State. Berger may be served with process at 10 Wedgewood Court, Greensboro, NC 27403.

6. Defendant Wendy Buttrey is an individual residing in Irmo, South Carolina, who previously served as a Sales Representative for Share, and who is now employed by and/or associated with defendant Momar, a direct competitor of Share. For purposes of diversity jurisdiction, Buttrey is a citizen of the State of South Carolina, and no other State. Buttrey may be served with process at 230 Wychwood Road, Irmo, SC 29063.

7. Defendant Stephen Kuti is an individual residing in Waterloo, New York, who previously served as a Sales Representative for Share, and who is now employed by and/or associated with defendant Momar, a direct competitor of Share. For purposes of diversity jurisdiction, Kuti is a citizen of the State of New York, and no other State. Kuti may be served with process at 1721 Seneca Trail, Waterloo, NY 13165.

8. Defendant Rod Miller is an individual residing in Rehoboth, Delaware, who previously served as a Manager for Share, and who is now employed by and/or associated with defendant Momar, a direct competitor of Share. For purposes of diversity jurisdiction, Miller is a citizen of the State of Delaware, and no other State. Miller may be served with process at 35673 Highlands Way, Rehoboth, DE 19971.

9. Defendant Lawrence Smith is an individual residing in Stowe, Vermont, who previously served as a Sales Representative for Share, and who is now employed by and/or associated with defendant Momar, a direct competitor of Share. For purposes of diversity jurisdiction, Smith is a citizen of the State of Vermont, and no other State. Smith may be served with process at 1568 Moscow Road, Stowe, VT 05672.

10. Defendant Ira Woren is an individual residing in Albany, New York, who previously served as a Manager for Share, and who is now employed by and/or associated with defendant Momar, a direct competitor of Share. For purposes of diversity jurisdiction, Woren is a citizen of the State of New York and no other State. Woren may be served with process at 15 Anthony Lane, Albany, NY 12205.

## JURISDICTION AND VENUE

11. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2), or in the alternative § 1391(a)(3), in that the Managers contractually availed themselves of the jurisdiction of and venue in Wisconsin, the claims against all the Defendants arise from a common set of facts, and a substantial part of the events giving rise to the claim occurred in Wisconsin.

## GENERAL FACTUAL BACKGROUND

13. Share sells specialty chemical solutions to customers in Wisconsin, Alabama, New York, Delaware, South Carolina, North Carolina, Vermont, and most of the remaining contiguous states in the United States. More particularly, Share is engaged in the sale and distribution of a variety of products and services, including but not limited to disinfectants, cleaners, chemicals, degreasers, and floor maintenance materials and equipment, as well as related products, materials, equipment, and services.

14. Share sells and distributes its products and services through sales representatives employed by Share, such as Bayer, Buttrey, Kuti and Smith (the "Sales Reps") and through managers, such as Arensberg, Berger, Miller, and Woren (the "Managers") (the Sales Reps and Managers will be collectively referred to as the "Individual Defendants").

15. The sales representatives at Share, as part of their job, and the managers at Share, as part of managing the sales force, receive and review information regarding sales orders, customer names, purchasing habits and similar information about Share's customers.

16. As part of their compensation, the Individual Defendants received commissions for sales generated to these same customers of Share.

17. The Sales Reps and the Managers were the primary, and in many cases the only, company representatives who had contact with Share's customers.

18. The nature of the business conducted by Share including, but not limited to, the services provided by the Individual Defendants, involves frequent personal contact between Share's salespeople and managers, and its customers, and the development of trust and confidence in Share's products and services.

19. Share has invested considerable time, expense, and resources in its sales people and managers, including the Individual Defendants, to permit them to perform their work with Share and its customers competently and credibly. Share has also invested significant time, expense and resources to create and maintain its customer relationships.

20. In addition, Share has invested substantial time, expense, and resources to build its reputation, image and relationships with its customers and business contacts, and it has established a valuable and substantial reputation, trade and patronage.

21. Share maintains trade secrets that are valuable, confidential, and proprietary to Share, and that are not generally known in the public domain.

22. The Individual Defendants, while associated with Share, gained detailed and intimate knowledge of Share's trade secrets, customers, and the needs, preferences, likes, and dislikes of such customers.

23. Share's trade secrets, confidential information, and customer relationships have significant economic value to Share, and Share has a legitimate business interest in keeping such information confidential, in maintaining its business goodwill and customer relationships, and in

not allowing its trade secrets and other confidential information to be disclosed to its competitors through any improper means.

24. Share's trade secrets, confidential information, employee relationships, salespeople relationships, and customer relationships would be of significant economic value to Share's competitors.

25. To protect its business goodwill and customer relationships, confidential information and trade secrets, Share requires its managers to sign written agreements that, among other things, contain certain restrictions on their business activities after their contractual relationship with Share ends.

26. In addition, Share requires its managers and sales representatives to sign written agreements that restrict disclosure of confidential information after their contractual relationships with Share end.

## FACTS SPECIFIC TO THE INDIVIDUAL DEFENDANTS AND MOMAR

27. On or about May 8, 1995, April 30, 2008, August 4, 1995, and April 29, 2008, Arensberg, Berger, Miller, and Woren, respectively, as a condition of their respective affiliation with Share, entered into written agreements with Share, whereby they each agreed to serve as a Manager on behalf of Share. The written agreements between Share and the Managers are entitled *"Manager's Agreement"* (hereinafter the "Manager's Agreement"). A copy of each agreement is attached as Exhibits A, B, C, and D to this Complaint and incorporated by reference.

28. As managers with Share, the Managers were provided with Share's trade secrets and confidential information, and worked directly with Share's customers.

29. In the Manager's Agreement, the Managers each expressly recognized and acknowledged that in the course of performing their work on behalf of Share, they would be given proprietary and confidential information and trade secrets belonging to Share, and that they had an obligation to maintain the confidentiality of such information. Specifically, they acknowledged in their Agreement that:

> Manager acknowledges that Share Corporation's product formulations, manufacturing processes, financial information, marketing and sales plans, and materials developed for sales, marketing, promotion and training are proprietary and confidential information. Manager agrees not to disclose such information at any time in any form to persons outside of Share Corporation, except as necessary in the conduct of the business affairs for Share Corporation. Manager also agrees upon leaving the employment of Share Corporation to return all documents or other data compilations of any kind containing such information, and to return any other property of Share Corporation. Manager agrees not to use or disclose Share proprietary or confidential information for the benefit of any competitor of Share Corporation.

(Exhibits A-D.)

30. On or about January 6, 2003, August 9, 2004, May 2, 2008, and January 23, 2009, Bayer, Buttrey, Kuti and Smith, respectively, and as a condition of their respective affiliation with Share, entered into written agreements with Share, whereby they each agreed to serve as a sales representative on behalf of Share. The written agreements between Share and the Sales Reps are entitled *"Representative Agreement"* (hereinafter the "Rep Agreement," and, together with the Manager's Agreement, the "Agreements"). A copy of each Rep Agreement is attached as Exhibits E, F, G, and H, to this Complaint and incorporated by reference.

31. As sales representatives with Share, the Sales Reps were provided with Share's trade secrets and confidential information, and worked directly with Share's customers.

32. In the Rep Agreement, the Sale Reps each expressly recognized and acknowledged that in the course of performing their work on behalf of Share, they would be given proprietary and confidential information and trade secrets belonging to Share, and that they had an obligation to maintain the confidentiality of such information. Specifically, they acknowledged in their Rep Agreements that:

> Representative acknowledges that Share Corporation's product formulations, manufacturing processes, financial information, marketing and sales plans, and materials developed for sales, marketing, promotion and training are proprietary and confidential information. Representative agrees not to disclose such information at any time in any form to persons outside of Share Corporation, except as necessary in the conduct of the business affairs of Share Corporation. Representative further agrees not to use or disclose Share proprietary or confidential information for the benefit of any competitor of Share Corporation.

(Exhibits E-H.)

33. The customer information to which the Individual Defendants were exposed in the course of their work on behalf of Share included, but was not limited to the identity of the purchasing agents and buyers, the nature of the business, particular purchasing requirements and habits, stocking requirements, product applications, uses and preferences, prices paid for particular products, and practices and procedures of customers and prospective customers.

34. The Managers further agreed that they would not, for a period of one year following the end of their affiliation with Share, "solicit business for chemical sales within his geographic region from any customers whom he served while employed at Share Corporation, or who were served by persons working under his direct supervision or control and with whom he had direct contact as an employee of Share." (Exhibits A-D.)

35. Each of the Managers additionally agreed that if he left Share's employment for any reason, "for a period of three years he will not, directly or indirectly, solicit any employees

of Share Corporation to work with him or any company with whom he is employed or with which he is affiliated; provided, however, that this restriction only applies to employment in the chemical sales industry." (Exhibits A-D.)

36. Share expended substantial time, expense, and resources in developing and supporting the Individual Defendants in the course of their employment with Share. Share also placed the Individual Defendants in direct contact with its customers, and confided its confidential and proprietary information to them.

37. During the summer of 2009, the Individual Defendants, except for Smith, voluntarily terminated their employment with Share.

38. After the Individual Defendants ended their employment with Share, they began performing work for Momar, a direct competitor of Share.

39. On October 19, 2009, Share wrote to the Managers and Momar to remind them of the Managers' obligations under the Agreements. Copies of the October 19, 2009 correspondence is attached as Exhibits I, J, K, L, and M, to this Complaint and incorporated by reference.

40. Following the receipt of these letters, Momar and the Managers continued to solicit orders from and sell to Share's customers and also solicited Smith, still a Share employee at the time, to terminate his employment with Share and to join Momar.

41. The list of Share customers that have recently been solicited by and/or sold to are listed by Manager as follows:

> **Richard Arensberg**
> East Greenbush Central Schools in East Greenbush, NY;
> SUNY in Albany, NY;
> Village of Greenwich WWTP in Greenwich, NY;
> Schoharie County Division of Buildings and Grounds in Middleburgh, NY; and
> New York State Power Authority in Gilboa, NY.

**Ira Woren**
East Greenbush Central Schools in East Greenbush, NY; and
Niskayuna Central Schools in Niskayuna, NY.

**Ted Berger**
United Rentals in Rock Hill, SC;
Hayward Baker in Colfax, NC;
Guilford College in Greensboro, NC;
Sunbelt Rentals in Greensboro, NC;
Yester Oaks Apts, Greensboro, NC;
EcoFlo Inc., Greensboro, NC;
Marsh Furniture in High Point, NC;
Greensboro DOT in Greensboro, NC; and
Town of Butler Highway Department in Butler, NC.

**Rod Miller**
Ridgewood Manor in Smyrna, DE; and
Southern States in Centreville, DE.

42. The Sales Reps have also solicited Share customers on behalf of Momar. For example, Stephen Kuti has solicited Town of East Bloomfield Highway Department in East Bloomfield, New York. Upon information and belief, in soliciting these customers, the Sales Reps have used or disclosed Share's confidential information for the benefit of Momar in violation of their Agreements.

43. Momar competes directly with Share, offering competitive products and services in the same service and marketing areas in which Share conducts business.

44. Notwithstanding the Individual Defendants' Agreements and their contractual, statutory, and common law obligations not to use or disclose Share's confidential information and trade secrets, and the Managers' obligations not to contact or solicit Share's customers, not to solicit Share's sales agents, or to otherwise improperly compete with Share, the Individual Defendants have violated the terms of their Agreement. Momar had knowledge of and authorized such conduct.

45. The Individual Defendants have directly and/or indirectly contacted Share's customers as directly prohibited in the Manager's Agreement and disclosed Share's confidential information, in violation of the Agreements, and in violation of applicable law.

46. As a direct and proximate result of Defendants' actions including, but not limited to, the Individual Defendants' breaches of the Agreements, Share has been, and continues to be, damaged in an amount that is impossible to ascertain unless the Defendants are enjoined from the aforementioned conduct. Moreover, if the Individual Defendants are not so enjoined, Share will continue to be irreparably harmed by, among other things, loss of goodwill, loss of customer and business information, and will continue to suffer present and future economic loss.

47. Share has already suffered and will continue to suffer irreparable injury and harm to its business, and monetary damages alone are an inadequate redress for such continuing injury.

## COUNT I

### BREACH OF CONTRACT BY THE MANAGERS

48. Share repeats and realleges the allegations in paragraphs 1 through 47 as if fully set forth herein.

49. As a condition of their affiliation and continued affiliation with Share as a manager, the Managers entered into the Manager's Agreements that required the protection of confidential information, prohibited certain forms of solicitation of and sales to Share's customers for a specified period of time, and prohibited the solicitation of Share's employees for a specified period of time.

50. By and through their actions, the Managers have breached their contractual obligations as set forth in the Agreement.

51. As a direct and proximate result of the Managers' breaches of the Agreements, Share has suffered and will continue to suffer substantial irreparable harm and damages.

## COUNT II

## BREACH OF CONTRACT BY THE SALES REPS

52. Share repeats and realleges the allegations in paragraphs 1 through 51 as if fully set forth herein.

53. As a condition of their affiliation and continued affiliation with Share as sales representatives, the Sales Reps entered into the Rep Agreements that required the protection of confidential information.

54. By and through their actions, the Sales Reps have breached their contractual obligations as set forth in the Rep Agreements.

55. As a direct and proximate result of the Sales Reps' breaches of their Agreements, Share has suffered and will continue to suffer substantial irreparable harm and damages.

## COUNT III

## MISAPPROPRIATION OF TRADE SECRETS BY ALL DEFENDANTS

56. Share repeats and realleges the allegations in paragraphs 1 through 55 as if fully set forth herein.

57. Share has maintained and developed highly valuable trade secrets as defined in the Wisconsin Uniform Trade Secrets Act, Wis. Stat. Ann. Secs. 134.90 *et seq.* ("WUTSA"), and other proprietary information which are safeguarded as confidential and secret and protected from direct or indirect disclosure.

58. Share's trade secrets and other proprietary information are extremely valuable and critical to the operation of Share's business.

59. Under WUTSA, actual or threatened misappropriation of trade secrets may be enjoined and damages and attorney fees may be awarded.

60. The conduct of the Defendants constitutes the actual or threatened misappropriation, misuse, and/or inevitable disclosure or reliance upon Share's trade secrets and other confidential and proprietary information.

61. The Individual Defendants had access to Share's trade secrets and other confidential and proprietary information during their affiliation with Share.

62. The Defendants' actions expose Share to the disclosure, threatened disclosure, and/or inevitable disclosure of Share's valuable trade secrets and other confidential and proprietary information.

63. The Defendants have failed to protect or otherwise not use or disclose Share's trade secrets and other confidential and proprietary information.

64. The Defendants' actions as herein described constitute unlawful misappropriation by improper means of Share's trade secrets in violation of WUTSA.

65. Unless Defendants are enjoined from disclosing and utilizing Share's trade secrets and other confidential and proprietary information, Share will continue to be immediately and irreparably harmed since its competitors have received, will continue to receive, and have the use of trade secrets and other confidential information developed and maintained by Share that are not generally known to the public; and Defendants can use such trade secrets and confidential information to their economic advantage and to Share's detriment in competing unfairly with Share.

66. Share has taken reasonable precautions to preserve the secrecy of the trade secrets known to the Individual Defendants.

67. The Defendants' threatened misappropriation and/or misappropriation of Share's trade secrets is willful and malicious.

68. As a result of the threatened misappropriation and/or misappropriation of Share's trade secrets by Defendants, Share has suffered and will continue to suffer damages, as well as immediate and irreparable harm. Share has no adequate remedy at law.

69. The Individual Defendants are now employees of, and/or in association with, Momar, a direct competitor of Share, and the trade secrets and confidential information belonging to Share are valuable to the Individual Defendants and to Momar.

70. The Defendants have relied upon, have threatened to rely upon, and/or will inevitably rely upon and/or use to their advantage, the trade secrets and confidential information of Share as set forth above. Unless the Individual Defendants are enjoined from disclosing and/or utilizing these trade secrets and confidential information, Share will continue to be immediately and irreparably harmed since its competitor will receive and have the use of confidential information developed solely through the resources of Share and not generally known to the public, information which the Individual Defendants can use to their economic advantage and to Share's detriment in competing with Share.

71. As a result of Defendants' misappropriation and/or threatened misappropriation of Share's trade secrets, Share has suffered damages, as well as immediate and irreparable harm.

## COUNT IV

### TORTIOUS INTERFERENCE WITH CONTRACT BY MOMAR

72. Share repeats and realleges the allegations in paragraphs 1 through 71 as if fully set forth herein.

73. Defendant Momar has encouraged, induced or attempted to induce, and/or assisted or attempted to assist the Individual Defendants to violate the terms of their Agreements in order to enable it and them to unfairly compete against Share.

74. Momar intentionally, improperly and without privilege interfered with the contracts between Share and the Individual Defendants.

75. Momar had knowledge of the existence of the Agreements and had no privilege to interfere with the Agreements.

76. As a result of Momar's tortious and wrongful actions, Share has suffered damages, as well as immediate and irreparable harm to its business and its business relationships with customers.

## COUNT V

### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE BY ALL DEFENDANTS

77. Share repeats and realleges the allegations in paragraphs 1 through 76 as if fully set forth herein.

78. Over the years, Share has developed advantageous economic relationships with its customers and potential customers that contain the probability of future economic benefit to Share.

79. The Individual Defendants, with knowledge and authorization of Momar and in violation of the Agreements, have encouraged, induced or attempted to induce, and/or assisted or attempted to assist third parties, including customers, to terminate their business relationships and/or agreements with Share in order to enable Defendants to unfairly compete against Share.

80. Defendants intentionally, improperly and without privilege interfered with the business relationships between Share and its customers.

81. Defendants had knowledge of the existence of the business relationships and/or agreements between Share and its customers, and Defendants had no privilege to interfere with those business relationships and/or agreements.

82. As a result of Defendants' tortious and wrongful actions, Share has suffered damages, as well as immediate and irreparable harm to its business and its business relationships with customers.

## COUNT VI

### ACCOUNTING

83. Share repeats and realleges the allegations in paragraphs 1 through 82 as if fully set forth herein.

84. Share seeks an accounting to determine the amount of business and assets the Defendants have misappropriated from Share. The exact nature and extent of damage to Share is unknown to Share at this time and cannot be determined without an accounting of: (1) The Individual Defendants' transactions relating to accounts they previously serviced or helped serviced or managed; (2) Momar's transactions relating to accounts that were serviced by the Individual Defendants while working for Share; and (3) the information and materials, electronic or in hard copy, misappropriated by the Individual Defendants and Momar due to the illegal acts of interference by Defendants.

## COUNT VII

### REQUEST FOR INJUNCTIVE RELIEF

85. Share repeats and realleges the allegations in paragraphs 1 through 84 as if fully set forth herein.

86. The Individual Defendants, with the knowledge and encouragement of Momar, are providing services to Momar in violation of their common-law and contractual duties to Share. The Individual Defendants' breaches of their contractual and common law duties have caused and will continue to cause irreparable harm in the form of damages and loss of goodwill to Share before a trial on the merits of this action for which Share has no adequate remedy at law.

87. Likewise, Momar's tortious interference with Share's business relationships and contracts with its customers and employees is causing Share damages and loss of goodwill for which there is no adequate remedy at law.

88. Similarly, Defendants' use and misappropriation of Share's confidential information and trade secrets is irreparable and the damage and loss of goodwill is such that Share has no adequate remedy at law. This irreparable harm is imminent if no injunction is issued.

89. Share asks the Court to issue an injunction order that in each instance:

(a) enjoins the Managers and Momar from soliciting business for chemical sales from any customers whom they served while employed at Share Corporation and customers who were served by persons working under their direct supervision or control and with whom they had direct contact as employees of Share;

(b) enjoins the Individual Defendants and Momar from the use, disclosure or misappropriation of Share's trade secrets;

(c) enjoins the Managers and Momar from directly or indirectly, soliciting any employees of Share Corporation to work with them or any company with whom they

are employed or with which they are affiliated; provided, however, that this restriction only applies to employment in the chemical sales industry; and

(d) enjoins the Individual Defendants from providing services to Momar such as would result in the probable disclosure of Share's trade secrets and other confidential and proprietary information.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims so triable in this action pursuant to Fed. R. Civ. P. 38(b).

## PRAYER FOR RELIEF

WHEREFORE, Share prays the Court for its order and judgment as follows:

A. Injunctive relief enjoining Defendants from engaging in any conduct in violation of the Agreements, misappropriation of Share's trade secrets and other confidential and proprietary information, or interfering with the relationships between Share and its customers or employees;

B. An accounting of (1) the Individual Defendants' transactions relating to accounts they previously serviced or helped service; (2) Momar's transactions relating to accounts that were serviced by the Individual Defendants while working for Share; and (3) the information and materials, electronic or in hard copy, misappropriated by the Individual Defendants and Momar due to the illegal acts of interference by Defendants;

C. Compensatory damages;

D. Punitive damages;

E. Attorneys' fees;

F. Costs;

G.  A jury trial on all claims so triable; and

H.  Such other and further relief to which the Plaintiff may be justly entitled, at law or at equity.

Dated this 9th day of February, 2010.

By: /s/ Susan E. Lovern

Mark F. Foley, (#1005627)
Susan E. Lovern, (#1025632)
Attorneys for Plaintiff, Share Corporation
von BRIESEN & ROPER, s.c.
411 East Wisconsin Ave., Ste. 700
Milwaukee, WI 53202
Telephone: (414) 276-1122
Fax: (414) 276-6281
E-mails: mfoley@vonbriesen.com and
slovern@vonbriesen.com

Brian Turner, (Texas Bar No. 20310450)
Law Office of Brian Turner
1000 Westbank Drive, Ste. 6-200
Austin, TX 78746
Telephone: (512) 615-3300
Fax: (512) 857-1038
E-mail: bt@2100emlk.com
(application for admission to practice forthcoming)

21558111_1.DOC