# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

SHARE CORPORATION,

        Plaintiff,

     v.                                                    Case No. 10-CV-109

MOMAR INC., RICHARD ARENSBERG,
FRED BAYER, TED BERGER,
WENDY BUTTREY, STEPHEN KUTI,
ROD MILLER, LAWRENCE SMITH, and
IRA WOREN,

        Defendants.

_____

## ORDER

        On March 8, 2010, the defendants, Momar Inc. ("Momar"), Richard Arensberg ("Arensberg"), Fred Bayer ("Bayer"), Ted Berger ("Berger"), Wendy Buttrey ("Buttrey"), Stephen Kuti ("Kuti"), Rod Miller ("Miller"), Lawrence Smith ("Smith"), and Ira Woren ("Woren"), filed their response brief (Docket #61) to the motion of the plaintiff, Share Corporation ("Share"), for a temporary restraining order and preliminary injunction. (Docket #4). With the defendants' brief, the court has been apprised by both sides regarding legal efficacy of the plaintiff's motion and is now prepared to rule on the motion.[1]

---

[1] The court finds no need to hold a hearing on a motion for a preliminary injunction. The arguments proffered by the parties in their briefs to the court, coupled with the evidence provided by the parties thus far, allows this court to conclude that a hearing is unnecessary.

## FACTUAL BACKGROUND

The court already discussed the facts animating this dispute in its February 26, 2010 order on the plaintiff's motion for court ordered expedited discovery (Docket #35), but, as a reminder, the present dispute is between companies within the chemical sales industry, Share and Momar. Each company sells chemicals and cleaning and maintenance products to customers throughout the country through its respective "sales representatives" whose work is overseen, in turn, by a "manager." Both the customers and products each company deals with are diverse in nature; Share boasts that it has "a product to serve virtually every industry and business." *About Share Corporation*, http://www.sharecorp.com/aboutus.php (last visited March 9, 2010). Starting in the summer of 2009, Momar hired several salespersons[2] and managers[3] who formerly worked for Share, all of whom consist of the individually named defendants. Worried that their former employees would lure away the customers they served while at Share, the plaintiff sent "cease and desist" letters to the individual defendants in October of last year, demanding that the employee: (1) "immediately cease" any "solicitation of Share's customers, agents, or employees"; (2) stop the use of "Share's Proprietary and Confidential Information"; and (3) return "any and all of Share's" confidential information that is in the employee's possession. Apparently finding the defendants' response to the plaintiff's letters inadequate,

---

[2] Defendants Bayer, Buttrey, Kuti, and Smith were employed as sales representatives with Share.

[3] Defendants Arensberg, Berger, Miller, and Woren were employed as managers with Share.

Share opted to file a complaint against Momar and the plaintiff's former employees on February 9, 2010. (Docket #1). The plaintiff waited three days and then filed a motion for a preliminary injunction. (Docket #4). Having been briefed by both sides on the legal issues in this case, the court will deny the plaintiff's motion.

## DISCUSSION

Initially, the court notes that a preliminary injunction is "an exercise of a very far reaching power, never to be indulged except in a case clearly demanding it." *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 389 (7th Cir. 1984) (internal citations omitted). As a result, the plaintiff has a number of hurdles to overcome before it can obtain preliminary injunctive relief. It must first demonstrate as a threshold matter: (1) some likelihood of success on the merits of its claims; (2) the plaintiff will suffer irreparable harm if the injunction is denied; and (3) there is no adequate remedy at law. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.,* 549 F.3d 1079, 1086 (7th Cir. 2008). If the plaintiff satisfies these three elements, the court must then determine whether: (1) the harm the plaintiff would suffer if the court denied an injunction would outweigh the harm the defendant would suffer if the injunction issues; and (2) the public interest would not be affected negatively by the issuance of an injunction. *Id.* During the balancing stage of the preliminary injunction inquiry, the court employs a "sliding scale" approach, such that the less likely it appears that a plaintiff is able to succeed on the

-3-

merits of its claim, the greater the balance of irreparable harms demonstrated will need to favor the plaintiff. *Id.*

## A. Likelihood of Success

To meet the first threshold element for preliminary injunctive relief, the moving party must show "a better than negligible" chance of success on the merits of at least one of its claims. *Id.* at 1096. The plaintiff argues that it can succeed on its claims for: (1) breach of contract; (2) misappropriation of trade secrets; and (3) tortious interference with contract. The court will examine the likelihood of success on each claim respectively.

### 1. Breach of Contract

Each of the individual defendants signed an agreement with Share when they were employed by the plaintiff. Share contends that its former employees have breached various clauses in their employment agreement. Specifically, Share contends that its former managers breached clauses in their respective employment agreements that required: (1) for one year that the former employees not solicit customers they had served while at Share; (2) for two to three years, depending on the individual agreement,[4] not solicit employees of Share to join the defendant's new employer; and (3) to not disclose Share's proprietary or confidential information. Share also contends that its former sales representatives breached clauses in their

---

[4] Arensberg and Miller's employment agreements had employee non-solicitation clauses that lasted three years. Berger and Woren's employment agreements had employee non-solicitation clauses that lasted two years.

-4-

employment agreements, similar to the clauses in the former managers' agreements, requiring confidentiality regarding Share's proprietary information. The defendants claim that each of the clauses are unenforceable, negating Share's breach of contract claims.

### a. Customer Non-Solicitation Clause

The parties agree that Wisconsin law is to be applied in assessing the plaintiff's claims and, with that, the enforceability of the restrictive covenants within the employment agreements. Wis. Stat. § 103.465 states in relevant part:

> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

Covenants to not compete are generally disfavored, as Wisconsin law promotes the mobility of workers. *Sysco Food Servs. of E. Wis., LLC v. Ziccarelli*, 445 F. Supp. 2d 1039, 1043 (E.D. Wis. 2006). Therefore, "a contract that operates to restrict trade or competition is prima facie suspect and will be liberally construed in favor of the employee." *Id.* at 1043-44 (internal citations omitted). To determine whether a provision is reasonable under § 103.465, Wisconsin courts typically examine five factors: (1) whether the agreement is necessary to protect a legitimate business interest of the employer; (2) whether it is reasonable as to duration; (3)

-5-

whether it is reasonable as to geography; (4) whether it is reasonable as to the employee; and (5) whether it is reasonable as to the general public. *Chuck Wagon Catering, Inc. v. Raduege*, 88 Wis. 2d 740, 751 (1979). Ultimately, whether a non-compete agreement is reasonable depends on the totality of the facts and circumstances. *Techworks, LLC v. Wille*, 2009 WI App 101, ¶ 4 (Ct. App. 2009).

The customer non-solicitation clause at issue in this case reads as follows:[5]

> Manager further agrees that for a period of one year following the termination of his/her employment with SHARE CORPORATION, Manager will not solicit business for chemical sales within his/her geographic region from any customers whom he/she served while employed at SHARE CORPORATION, or who were served by persons working under his/her direct supervision or control and with whom Manger had direct contact as an employee of SHARE CORPORATION.

The court finds, for the purpose of the preliminary injunction inquiry, that the customer non-solicitation clause is unenforceable under Wisconsin law. The clause, while only applicable for one year after the employee leaves Share, is still very broad. First, the restrictive covenant's limit on "geographic region" is not much of a limit at all, as the covenant prevents the employee from soliciting any customers within his or her "geographic region," a phrase that on its face has no limiting factor and, in reality, would prevent the employee from contacting any of his or her former customers. Failing to define what "geographic region" means the customer non-solicitation covenant is immediately questionable. *See Sysco Food Servs.*, 445 F. Supp. 2d at 1048, ("[T]he non-solicitation covenant is immediately suspect because

---

[5]The clauses vary immaterially based on the particular defendant.

-6-

it fails to define a specific territory.") While that fact alone may not be fatal to the customer non-solicitation clause, *see Rollins Burdick Hunter, Inc. v. Hamilton*, 101 Wis. 2d 460, 467 (Wis. 1981) ("[W]e hold that the territorial limitation of a restrictive covenant need not be expressed in geographic terms as an absolute prerequisite to a valid and enforceable agreement"), the fact that the customer non-solicitation clause provides no "backward restriction" regarding which customers the former Share employees can contact makes this case virtually indistinguishable from *Equity Enterprises, Inc. v. Milosch*, 2001 WI App 186 (Ct. App. 2001), a case in which the Wisconsin court of appeals found a clause that restricted an employee from soliciting any customer the employee transacted business with or serviced on behalf of his former employer for eighteen months after the end of his employment to be unenforceable. *Id.* at ¶ 15 n.4; c*f. Techworks,* 2009 WI App 101 at ¶ 10 (distinguishing *Equity Enterprises* based on whether the restrictive covenant had a backward restriction). Here, the covenant in question is arguably more restrictive than the one in *Equity Enterprises,* as the customer solicitation clause would not only prohibit the individual defendants from doing business with *any* customers that the manager personally served while employed at Share, but would also restrict the managers from contacting clients that the manager's *sales representatives* served while at Share. In the case of defendant Miller, the restrictive covenant would prevent him from contacting customers he or his sales representatives serviced over twenty years ago.

-7-

The cases cited for support by the plaintiff mainly involve cases in which there was a clear backward restriction limiting the scope of the restrictive covenant.[6] *See Star Direct, Inc. v. Dal Pra,* 2009 WI 76, ¶ 9 (2009) (upholding a customer non-solicitation clause that restricted the employee from contacting individuals who were customers "within a period time of one year prior to the termination of the employee's employment"); *Rollins Burdick,* 101 Wis. 2d at 462-63 (upholding a restrictive covenant that prohibited an employee from contacting clients who were customers for the previous two years); *Techworks,* 2009 WI App 101 at ¶ 10 (upholding a customer non-solicitation clause preventing the employee from contacting individuals who were "customers during the two years antedating [the employee's] departure from Techworks.") The only case that stands at odds is *Chuck Wagon Catering,* where the court upheld a restrictive covenant without a clear backward restriction. 88 Wis. 2d at 754. However, in *Chuck Wagon Catering,* the restrictive covenant limited the employee from soliciting customers he served while he was Chuck Wagon's lessee, a period of only two years. *Id.* at 746 n.2. Moreover, the restrictive covenant only reached the customers the lessee personally serviced. *Id.* Here, the customer non-solicitation clauses are far more broad and, as a result, constitutes an unreasonable restraint of trade.[7]

---

[6] The plaintiff also cites to *Lakeside Oil Co. v. Slutsky*, 8 Wis. 2d 157 (1959). That case, however, did not involve a customer non-solicitation clause and is not terribly instructive for the present case.

[7] The court notes that the ruling here is not that a "lack of a backward restriction means that the covenant is per se unenforceable." Here, however, the court, viewing the totality of the circumstances, including the lack of a backward restriction on the customer non-solicitation clause, can conclude that the covenant is unreasonable.

### b. Employee Non-Solicitation Clause

The second clause at issue in this case is the employee non-solicitation clause. Containing either a two or three year duration period depending on the defendant,[8] the clause reads as follows:

> [The manager] agrees that if he/she leaves Share Corporation's employment for any reason, for a period of [two/three] years he/she will not, directly or indirectly, solicit any employees of Share Corporation to work with him/her or any company with whom he/she is employed or with which he/she is affiliated, provided, however, that this restriction only applies to employment in the chemical sales industry.

Here, while the plaintiff spends a considerable amount of their brief to the court explaining why the customer non-solicitation clause is "necessary" for Share's protection, *see* Pl's Br. 10 ("Employers have a legitimate interest in protecting themselves from the loss of business or customers to a former employee by use of the opportunity which the employment has given the former employee"), Share has not clearly developed any argument as to why the *employee*-solicitation clause is valid. As such, the court finds that the plaintiff has not met its burden on this issue and cannot find that the plaintiff is likely to succeed on its breach of contract claim related to the employee non-solicitation clause. *See Techworks*, WI App 101 at ¶ 25 (holding that for a court to find a restrictive covenant enforceable, the party attempting to enforce the covenant must present "developed arguments" on the specific issue).

---

[8] Defendants Arsenberg and Miller's contracts contain a three year period in which they cannot solicit Share's employees. Defendants Berger and Woren's employee non-solicitation periods only last two years.

### c. Confidentiality Clauses

The last clause at issue with regard to the breach of contract claim is a confidentiality clause that is contained in each of the individual defendant's employment agreements. The clause reads as follows:

> [Manager/representative] acknowledges that Share Corporation's product formulations, manufacturing processes, financial information, marketing and sales plans, and materials developed for sales, marketing, promotion, and training are proprietary and confidential information. [Manager/representative] agrees not to disclose such information at any time in any form to persons outside of Share Corporation, except as necessary in the conduct of the business affairs of Share Corporation. [Manager/representative] further agrees not to use or disclose Share proprietary or confidential information for the benefit of any competitor of Share Corporation.

While not specifically contemplated by Wis. Stat. § 103.465, Wisconsin courts have found that nondisclosure agreements can constitute an unreasonable restraint on competition and, as a result, be prohibited by the statute. *Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 218 (1978). In *Tatge*, the Wisconsin Supreme Court found that a non-disclosure provision that prohibited the disclosure of the company's "information to any person, firm, corporation, association, or other entity for any reason or purpose whatever" was a restraint on trade because it was an attempt by the employer to "shield customer data, programs, and business practices from competitors' eyes." *Tatge v. Chambers & Owen, Inc.*, 219 Wis. 2d 99, 112 (1998). The provisions at issue in this case are indistinguishable from those at issue in *Van Zeeland* and *Tatge.* The only question that remains is whether the restraints imposed on trade by the non-disclosure clauses are unreasonable.

-10-

Case 2:10-cv-00109-JPS   Filed 03/11/10   Page 10 of 15   Document 62

Here, the question is fairly easy for the court to resolve.  As a recent case in federal court in the Western District of Wisconsin noted, the lack of any time limitation in a non-disclosure agreement "renders a restrictive covenant unreasonable per se." *Friemuth v. Fiskars Brands, Inc.*, No. 09-CV-494, 2010 U.S. Dist. LEXIS 9878, at *7-8 (W.D. Wis. Feb. 3, 2010) (citing to *Van Zeeland,* 84 Wis. 2d at 218).  There is no time limitation with regard to the confidentiality provisions within the employment agreements, and, as such, the clauses are unenforceable. It is not likely that the plaintiff will succeed on its breach of contract claim.

**2.      Misappropriation of Trade Secrets**

The Wisconsin Uniform Trade Secrets Act provides that actual or threatened misappropriation of trade secrets is prohibited. Wis. Stat. § 134.90(2). However, the plaintiff must prove, at this stage of the proceedings, that the information that it alleges the defendants of having misappropriated is a "trade secret" within the meaning of the act.  Wis. Stat. § 134.90(1).  To establish a trade secret, the plaintiff must show that the information "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" *and* that "[t]he information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances."  Wis. Stat. § 134.90(1)(c).  Here, the plaintiff contends that the following information constitute trade secrets: the "identity of the purchasing agents and buyers, the nature of the business, particular

purchasing requirements and habits, stocking requirements, product applications, uses and preferences, prices paid for particular products, and practices and procedures of customers and prospective customers." (Pl.'s Br. 15).

In this case, the plaintiff has failed to demonstrate that any of the generic business information Share describes in its submissions to the court constitute a trade secret. The information described by the plaintiff is extremely vague, and the court cannot guess at which pieces of information are trade secrets. *Idx Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002) (holding that "a plaintiff must do more than just identify [the general information at issue] and then invite the court to hunt through the details in search of items meeting the statutory definition.") At best, the information consists of data about various customers, information that Wisconsin courts routinely reject deeming as trade secrets. *See Nalco Chem. Co. v. Hydro Technologies*, 149 F.R.D. 686, 693 (E.D. Wis. 1993). Moreover, Share has provided the court with little reason to conclude that the company took reasonable measures to protect the confidentiality of the information. *Abbott Laboratories v. Norse Chemical Corp.*, 33 Wis. 2d 445, 457 (1967) ("The subject matter of a trade secret must be secret . . . . [a] substantial element of secrecy must exist, so that, except by the use of improper means, there would be difficulty in acquiring the information.") The only protections the court knows of that Share took to protect the relevant information is that the company had the managers and representatives sign confidentiality agreements. This alone cannot elevate the information the plaintiff

-12-

alleges are trade secrets to such a status.[9] *Cf. B.C. Ziegler & Co. v. Ehren*, 141 Wis. 2d 19, 27-29, 414 N.W.2d 48 (Ct. App. 1987) (holding a customer list to be a trade secret where list was kept in locked room and only accessible to one or two key employees).

### 3. Tortious Interference with Contract

Share alleges that Momar induced the individual defendants to breach their employment agreements. (Pl's Br. 17). However, given that the clauses in the contracts that Momar allegedly induced the individual defendants to breach are unenforceable, soliciting the individual defendants to breach those contracts would not constitute tortious interference with contract. *IDS Life Ins. Co. v. Royal Alliance Assocs.*, 266 F.3d 645, 649 (7th Cir. 2001) (applying analogous Illinois law). As such, the plaintiff does not have a likelihood of succeeding on its remaining claim.

## B. Irreparable Harm

Likewise, the court is not satisfied that the plaintiff has demonstrated it will be irreparably harmed if the court does not issue a preliminary injunction. Despite the fact that its employees were leaving as early as the Spring of 2009 to join Momar, Share did not file this lawsuit until February 9, 2010. (Docket #1). The plaintiff then waited another three days before deciding that a motion for a temporary restraining order or a preliminary injunction would be appropriate. Delay in pursuing a

---

[9] The court notes that while discovery has not occurred in this case, the data that Share poses as a trade secret is within the company's possession, and the plaintiff could have easily presented information on why the data constitutes a trade secret. The lack of evidence presented is telling.

-13-

preliminary injunction "raises questions" regarding the plaintiff's claim that it will face irreparable harm if a preliminary injunction is not entered. *Ty, Inc. v. Jones Group Inc.*, 237 F.3d 891, 903 (7th Cir. 2001). Moreover, the court notes that so much time has passed since Share's former employees left the company, that much of the harm alleged, if it occurred at all, occurred in the past. The purpose of a preliminary injunction is to preserve the "state of affairs existing immediately before the filing of the litigation," *see Rexnord, Inc. v. Laitram Corp.*, 628 F. Supp. 467, 469 (E.D. Wis. 1986), and that purpose is not satisfied in this case. The plaintiff has not demonstrated that irreparable injury will beset Share in the future absent this court ordering a preliminary injunction.

**C.     Conclusion**

Because the court concludes that the plaintiff is unlikely to succeed on the merits of its claims and that the plaintiff is unlikely to suffer irreparable injury absent this court imposing an preliminary injunction, the court need not delve into the remaining factors to determine whether preliminary injunctive relief is appropriate in this case. *In re Forty-Eight Insulations*, 115 F.3d 1294, 1301 (7th Cir. 1997) ("Applicants for preliminary relief have threshold burdens to demonstrate the first two factors: they must show that they have some likelihood of success on the merits and that they will suffer irreparable harm if the requested relief is denied . . . However, if the movant does not make the requisite showings on either of these two factors, the court's inquiry into the balance of harms is unnecessary, and the stay should be

denied without further analysis.") Going forward, the court awaits briefing on the defendant's motion to dismiss, filed March 4, 2010. (Docket #50).

Accordingly,

**IT IS ORDERED** that plaintiff's "motion for temporary restraining order and preliminary injunction" (Docket #4) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 11th day of March, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge