# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

SHARE CORPORATION,

                Plaintiff,

        v.                                                    Case No. 10-CV-109

MOMAR INC., RICHARD ARENSBERG,
FRED BAYER, TED BERGER,
WENDY BUTTREY, STEPHEN KUTI,
ROD MILLER, LAWRENCE SMITH, and
IRA WOREN,

                Defendants.

_____

# ORDER

On March 29, 2010, the plaintiff, Share Corporation ("Share"), filed an amended complaint against the above-named defendants, alleging violations of Wisconsin state tort and contract law. (Docket #68).  On April 26, 2010, the defendants collectively filed, pursuant to Fed. R. Civ. P. 12(b)(6), a joint motion to dismiss Share's amended complaint in its entirety, contending that the complaint failed to state a claim upon which relief can be granted. (Docket #74). All of the parties have fully briefed the court on the relevant issues related to the motion to dismiss and, as a result, the court is prepared to rule on the motion.

# BACKGROUND

The court already discussed the facts animating this dispute in its February 26, 2010 order on the plaintiff's motion for court-ordered expedited discovery (Docket #35) and again in its March 11, 2010 order on the plaintiff's motion for a

temporary restraining order and preliminary injunction. (Docket #62). However, as a reminder, the present dispute is between companies within the chemical sales industry, Share and defendant Momar, Inc. ("Momar"). Each company sells chemicals and cleaning and maintenance products to customers throughout the country through its respective "sales representatives" whose work is overseen by a "manager." Both the customers and the products dealt with by each company are diverse. Starting in the summer of 2009, Momar hired several salespersons[1] and managers[2] who formerly worked for Share, all of whom consist of the individually named defendants. Worried that its former employees would lure away the customers they served while at Share, the plaintiff sent "cease and desist" letters to the individual defendants in October of 2009, demanding that the employee: (1) "immediately cease" any "solicitation of Share's customers, agents, or employees"; (2) stop the use of "Share's Proprietary and Confidential Information"; and (3) return "any and all of Share's" confidential information that is in the employee's possession. Share then filed a complaint against Momar and the plaintiff's former employees on February 9, 2010. (Docket #1). Three days after filing its complaint, Share opted to file a motion to expedite discovery in the case (Docket #3) and a motion for a temporary restraining order or a preliminary injunction. (Docket #4). The court denied both motions. (Docket #'s 35, 62). In the meantime, on March 4, 2010, the

---

[1]Defendants Fred Bayer ("Bayer"), Wendy Buttrey ("Buttrey"), Stephen Kuti ("Kuti"), and Lawrence Smith ("Smith") were employed as sales representatives with Share.

[2]Defendants Richard Arensberg ("Arensberg"), Ted Berger ("Berger"), Rod Miller ("Miller"), and Ira Woren ("Woren") were employed as managers with Share.

defendants filed their first motion to dismiss the complaint. (Docket #50). Share then opted to file an amended complaint on March 29, 2010. (Docket #68). The defendants' response to the amended complaint – a second joint motion to dismiss – is now before the court. (Docket #74).

# DISCUSSION

## I.    Legal Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the plaintiff's complaint by asserting that the claimant failed to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), claimant's complaint must allege facts sufficient to "state a claim for relief that is plausible on its face." *Justice v. Town of Cicero*, 557 F.3d 768, 771 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). Pleaders must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 1129 S. Ct. at 1940. However, the court construes the complaint in the light most favorable to the claimant, accepts as true all well-pleaded facts alleged, and draws all possible inferences in the claimant's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Yet, the court need not accept as true "legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Indeed, "[a] ruling concerning the legal sufficiency of the complaint is an appropriate determination to make in response to a motion to dismiss." *Sanner v. Board of Trade of City of Chicago*, 62 F.3d 918, 924 (7th Cir. 1995) (citing *Gomez v. Illinois State Board of*

*Education*, 811 F.2d 1030, 1039 (7th Cir. 1987)).  Moreover, "a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case." *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1949).  In addition, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Normally, the court cannot consider documents outside the pleadings before the district court unless the court converts the defendant's Rule 12(b)(6) motion to one for summary judgment and allows the plaintiff to submit additional evidentiary material of his own.  *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).  The court will not consider the evidence submitted by Share outside the pleadings and, thus, will not convert this motion to one for summary judgment.

## II.  Breach of Contract

Each of the individual defendants signed an agreement with Share when they were employed by the plaintiff.  Share now contends that its former employees have breached various clauses in their employment agreements. Specifically, Share contends that its former managers breached clauses in their respective employment agreements that required:  (1) for one year that the former employees not solicit customers they had served while at Share; (2) for two to three years, depending on

the individual agreement,[3] that the former employees not solicit employees of Share to join their new employer; and (3) that the former employees not disclose Share's proprietary or confidential information. Share also contends that its former sales representatives breached clauses in their employment agreements similar to the clauses in the managers' agreements, requiring confidentiality regarding Share's proprietary information. On the other hand, the defendants claim that each of the clauses are unenforceable, negating Share's breach of contract claims.

The parties agree that Wisconsin law is to be applied in assessing the plaintiff's claims and, with that, the enforceability of the restrictive covenants within the employment agreements. Wis. Stat. § 103.465 states in relevant part:

> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

Covenants to not compete are generally disfavored, as Wisconsin law promotes the mobility of workers. *Sysco Food Servs. of E. Wis., LLC v. Ziccarelli*, 445 F. Supp. 2d 1039, 1043 (E.D. Wis. 2006). Therefore, "a contract that operates to restrict trade or competition is prima facie suspect and will be liberally construed in favor of the employee." *Id.* at 1043-44 (internal citations omitted). To determine

---

[3]Arensberg and Miller's employment agreements had employee non-solicitation clauses that lasted three years. Berger and Woren's employment agreements had employee non-solicitation clauses that lasted two years.

whether a provision is reasonable under § 103.465, Wisconsin courts typically examine five factors: (1) whether the agreement is necessary to protect a legitimate business interest of the employer; (2) whether it is reasonable as to duration; (3) whether it is reasonable as to geography; (4) whether it is reasonable as to the employee; and (5) whether it is reasonable as to the general public. *Chuck Wagon Catering, Inc. v. Raduege*, 88 Wis. 2d 740, 751 (1979). Ultimately, whether a non-compete agreement is reasonable depends on the totality of the facts and circumstances. *Techworks, LLC v. Wille*, 2009 WI App 101, ¶ 4.

As an initial matter, the court finds it necessary to address the plaintiff's argument that a determination of the reasonableness of restrictive covenants should not be made in addressing a motion to dismiss on the pleadings. Rather, Share contends that the reasonableness test is a fact-intensive exercise that requires further development of the record in every case. The plaintiff draws its view from a line of cases, including *Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton*, 101 Wis.2d 460, 304 N.W.2d 752 (1981), where the Wisconsin Supreme Court concluded that additional facts were required before deciding whether a particular restrictive covenant was unenforceable under § 103.465. In that decision, the court explained that "what is reasonable varies from case to case" and the issue is one that can only be determined "upon consideration of factual matters." *Id.* Since *Rollins*, several courts have required development of the record before deciding whether a restrictive covenant is enforceable under Wisconsin law. *Farm Credit Services of North Central Wisconsin, ACA v. Wysocki*, 2001 WI 51, ¶ 16, 243 Wis.2d

305, 627 N.W.2d 444; *Aon Risk Services, Inc. v. Liebenstein*, 2006 WI App 4, ¶ 15, 289 Wis.2d 127, 710 N.W.2d 175; *General Medical Corp. v. Kobs*, 179 Wis.2d 422, 434-36, 507 N.W.2d 381, 386-87 (Wis. Ct. App.1993); *IDX Systems Corp. v. Epic Systems Corp.*, 285 F.3d 581, 586 (7th Cir. 2002); *Henderson v. U.S. Bank, N.A.*, 615 F.Supp.2d 804, 811-12 (E.D. Wis. 2009). This court recognizes that development of the record may be necessary in some cases to determine the reasonableness of a restrictive covenant. Yet, this does not change those instances in which the law is absolutely clear as to what is reasonable and what is not. If the plaintiff pleads factual content that is, on its face, not reasonable, then the plaintiff has failed to state a claim upon which relief may be granted. In such instances, further development of the record is not necessary. This is the approach taken by a branch of the Western District of Wisconsin in *Friemuth v. Fiskars Brands, Inc.*, 681 F.Supp. 2d 985 (W.D. Wis. 2010). In this case, the district court noted that the Wisconsin Supreme Court has indicated that the lack of any time limitation renders a restrictive covenant unreasonable per se. *Id.* at 989 (citing *Gary Van Zeeland Talent, Inc. v. Sandas,* 84 Wis.2d 202, 215, 267 N.W.2d 242, 249 (1978)). The court determined that further development of the record was not necessary in *Friemuth* because the provision at issue lacked any time limitation, thus, there was no question of the unenforceability of the covenant. *Friemuth*, 681 F.Supp. 2d at 989. Accordingly, the case was dismissed for failure to state a claim upon which relief may be granted.

Therefore, any non-compete provision that fails to incorporate a time limitation, with limited exceptions, should be deemed unreasonable and, therefore, unenforceable. No further development of the record is necessary in such cases and dismissal on the pleadings is appropriate.

## A.    Customer Non-Solicitation Clause

The customer non-solicitation clause at issue in this case reads as follows:[4]

> Manager further agrees that for a period of one year following the termination of his/her employment with SHARE CORPORATION, Manager will not solicit business for chemical sales within his/her geographic region from any customers whom he/she served while employed at SHARE CORPORATION, or who were served by persons working under his/her direct supervision or control and with whom Manger had direct contact as an employee of SHARE CORPORATION.

The court finds that the customer non-solicitation clause is unenforceable under Wisconsin law. The clause includes a time limitation as to how long after employment with Share a former employee will be restricted from soliciting Share customers. However, the clause fails to include another time limitation required by Wisconsin law – a backward restriction. A backward restriction limits former employees from contacting individuals who were customers within a period prior to the termination of the employee's employment. *Equity Enterprises, Inc. v. Milosch*, 2001 WI App 186. The fact that Share's customer non-solicitation clause provides no backward restriction regarding which customers the former Share employees can contact makes this case virtually indistinguishable from *Equity Enterprises, Inc. v. Milosch*, a case in which the Wisconsin court of appeals found a clause that

---

[4]The clauses vary immaterially based on the particular defendant.

restricted an employee from soliciting any customer the employee transacted business with or serviced on behalf of his former employer for eighteen months after the end of his employment to be unenforceable. *Id.* at ¶ 15 n.4; c*f. Techworks,* 2009 WI App 101 at ¶ 10 (distinguishing *Milosch* and holding that a customer non-solicitation clause with a two-year-backward restriction was a reasonable time restriction under Wisconsin non-compete law). Here, as in *Milosch*, the restrictive covenant for solicitation of customers extends to when the individual employee first started to work for Share. In the case of defendant Miller, the restrictive covenant would prevent him from contacting customers he or his sales representatives serviced over twenty years ago.

Cases upholding customer non-solicitation clauses have only done so when an explicit backward restriction is included. *See Star Direct, Inc. v. Dal Pra,* 2009 WI 76, ¶ 9 (2009) (upholding a customer non-solicitation clause that restricted the employee from contacting individuals who were customers "within a period time of one year prior to the termination of the employee's employment"); *Rollins Burdick,* 101 Wis. 2d at 462-63 (upholding a restrictive covenant that prohibited an employee from contacting clients who were customers for the previous two years); *Techworks,* 2009 WI App 101 at ¶ 10 (upholding a customer non-solicitation clause preventing the employee from contacting individuals who were "customers during the two years antedating [the employee's] departure from Techworks.") The only case that stands at odds is *Chuck Wagon Catering, Inc. v. Raduege,* where the court upheld a restrictive covenant without an explicit backward restriction. 88 Wis.2d at 754.

However, in *Chuck Wagon Catering,* the restrictive covenant limited the employee from soliciting customers he served while he was Chuck Wagon's lessee, a period of only two years. *Id.* at 746 n.2. Moreover, the restrictive covenant only reached the customers the lessee personally serviced. *Id.* Here, the customer non-solicitation clauses are far more restrictive as the customer solicitation clause would not only prohibit the individual defendants from doing business with *any* customers that the manager personally served while employed at Share, but would also restrict the managers from contacting clients that the manager's *sales representatives* served while at Share. Because Wisconsin non-compete law clearly holds customer non-solicitation clauses lacking any backward restriction – whether express or implied – to be unreasonable, the court finds that no further development of the record is necessary to determine that Share's clause is unreasonable.

Share attempts to salvage its customer solicitation clauses by arguing that each provision of the covenant must be read in the context of the whole covenant. Specifically, Share contends that, because the customer non-solicitation provision contains a geographic limitation, it is sufficiently limited, and leaves the managers with a broad scope of potential customers outside the boundaries of the employment agreements. However, this argument works against Share because "any part of an indivisible covenant, even if reasonable on its own, will not be given effect if any other part is unreasonable." *Milosch,* 2001 WI App at ¶ 14 (citing *Streiff v. American Family Mutual Insurance Co.*, 118 Wis.2d 602, 614-15, 348 N.W.2d 505 (Wis. 1984)); *see also* Wis. Stat. § 103.465 ("Any covenant described in this subsection,

imposing an unreasonable restraint is illegal, void, and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint."). Here, no question exists as to the customer solicitation clauses' unreasonableness because Share incorporated no backward restriction into the provisions. The inclusion of a geographic limitation in the covenant will not save the clause. Accordingly, the plaintiff's claim that its former managers breached the customer solicitation agreements fails as a matter of law because the clauses are unenforceable.

### B. Employee Non-Solicitation Clause

The second clause at issue in this case is the employee non-solicitation clause. Containing either a two or three year duration period depending on the defendant,[5] the clause reads as follows:

> [The manager] agrees that if he/she leaves Share Corporation's employment for any reason, for a period of [two/three] years he/she will not, directly or indirectly, solicit any employees of Share Corporation to work with him/her or any company with whom he/she is employed or with which he/she is affiliated, provided, however, that this restriction only applies to employment in the chemical sales industry.

The defendants argue that this provision is unenforceable because it restricts employment opportunities of employees without their knowledge and consent and it is not reasonably necessary to protect Share. The defendants rely upon the Wisconsin Supreme Court's holding in *Heyde Cos. v. Dove Healthcare, LLC,* 2002

---

[5] Defendants Arensberg and Miller's contracts contain a three year period in which they cannot solicit Share's employees. Defendants Berger and Woren's employee non-solicitation periods only last two years.

WI 131, 258 Wis.2d 28, 654 N.W.2d 830, which found that a no-hire provision agreed to by employers that restricts employment opportunities of employees without their knowledge and consent constitutes an unreasonable restraint of trade in violation of Wis. Stat. § 103.465. However, this court is hesitant to extend that holding to the case at hand, at least at this stage of the proceedings, because at issue here is not an employee no-hire provision, but rather an employee non-solicitation provision. As the plaintiff argues, all that the clause prohibits is a former employee's enticement of a current Share employee to work for a new employer. The provision does not prohibit hiring, nor does it prohibit the current employee from seeking out work at a new employer. On the other hand, such a provision could be viewed as hindering employment opportunities and hiring. In any event, the court will refrain, at least at this juncture, from finding the clause unenforceable under the holding in *Heyde*. The question of the reasonableness of the employee non-solicitation clause would likely benefit from further development of the record.

The defendants argue that the same rationale that Wisconsin courts use to invalidate customer non-solicitation clauses should be used to invalidate Share's employee non-solicit provision. For example, in the context of customer non-solicitation clauses, Wisconsin courts have found that an employer only has a legitimate interest in protecting the customers with whom the employee closely worked – non-solicit provisions that prohibit the employee from soliciting *all* the employer's customers are overly broad and unenforceable. *See Streiff v. American Fam. Mut. Ins. Co.*, 118 Wis.2d at 605-06, 614. Because Share's employee non-

solicit provision bars a manager's solicitation of any and all employees irrespective of whether the manager had a prior relationship with the employee solicited, the defendants argue it is clearly unenforceable. Moreover, the defendants contend that Share's provision acts as a "janitor clause" which is also unenforceable under Wisconsin non-compete law. "Janitor clauses" are provisions that prohibit employees from taking any position at a competitor, even those unrelated to a current position – for example, a Share manager could not be hired as a janitor by Momar under such a clause. *Mutual Service Casualty Ins. Co. v. Brass*, 2001 WI App 92, ¶¶ 8-9, 242 Wis.2d 733, 740, 625 N.W.2d 648, 652-53, *overruled in part on other grounds by Star Direct Inc. v. Dal Pra*, 2009 WI 76, 319 Wis.2d 274, 767 N.W.2d 898. Wisconsin courts find "janitor clauses" to be overly broad and, therefore, unreasonable. *Id.* While surely the employee non-solicit provision can be viewed through the lens of a no-hire provision or of a customer non-solicit provision and the rationales applied to invalidate those clauses may easily work to invalidate the clause here, the court concludes that it would be inappropriate to find the employee non-solicit provision unenforceable due to its unreasonableness at this stage of the proceedings.

However, that being said, Share is still required to sufficiently allege a breach of the employee non-solicit provision for its claim to survive a motion to dismiss. Here, Share has only done so with respect to defendant Berger. (Am. Compl. ¶¶ 44, 53). The extent of Share's allegations against the remainder of the individual defendant managers is that "the Managers have solicited Share employees,

including but not limited to, Mr. Smith and Mr. Saindon, to terminate employment with Share and join Momar." (Am. Compl. ¶ 66). Because this allegation is not supported by any specific factual content, the court finds that Share's claims stemming from breach of the employee non-solicit provision against all individual defendant managers, except Berger, must be dismissed for failure to state a claim upon which relief may be granted.

## C.      Confidentiality Clauses

The last clause at issue with regard to the breach of contract claim is a confidentiality clause that is contained in each of the individual defendant's employment agreements. The clause reads as follows:

> [Manager/representative] acknowledges that Share Corporation's product formulations, manufacturing processes, financial information, marketing and sales plans, and materials developed for sales, marketing, promotion, and training are proprietary and confidential information. [Manager/representative] agrees not to disclose such information at any time in any form to persons outside of Share Corporation, except as necessary in the conduct of the business affairs of Share Corporation. [Manager/representative] further agrees not to use or disclose Share proprietary or confidential information for the benefit of any competitor of Share Corporation.

While not specifically contemplated by Wis. Stat. § 103.465, Wisconsin courts have found that non-disclosure agreements can constitute an unreasonable restraint on competition and, as a result, be prohibited by the statute. *Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 218 (1978). In *Tatge*, the Wisconsin Supreme Court found that a non-disclosure provision that prohibited the disclosure of the company's "information to any person, firm, corporation, association, or other

-14-

entity for any reason or purpose whatever" was a restraint on trade because it was an attempt by the employer to "shield customer data, programs, and business practices from competitors' eyes." *Tatge v. Chambers & Owen, Inc.*, 219 Wis. 2d 99, 112 (Wis. 1998). The provisions at issue in this case are indistinguishable from those at issue in *Van Zeeland* and *Tatge.* The only question that remains is whether the restraints imposed on trade by the non-disclosure clauses are unreasonable.

Here, the question is fairly easy for the court to resolve. As the *Friemuth* court noted, the lack of any time limitation in a non-disclosure agreement "renders a restrictive covenant unreasonable per se." *Friemuth v. Fiskars Brands, Inc.*, 681 F.Supp. 2d 985, 989 (citing to *Van Zeeland,* 84 Wis. 2d at 218). There is no time limitation with regard to the confidentiality provisions within the employment agreements, and, as such, the clauses are unenforceable.

Share argues that courts in some contexts have found that the absence of a temporal limit on a non-disclosure agreement does not render the provision per se unenforceable. *See Henderson v. U.S. Bank, N.A.*, 615 F.Supp. 2d 804 (E.D. Wis. 2009). However, these cases have only included non-disclosure provisions designed to protect trade secrets or intellectual property. *Id.* at 811 (citing *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d at 585-86; *Nalco Chem. Co. v. Hydro Technologies, Inc.*, 984 F.2d 801, 803 (7th Cir. 1993); *Techworks*, 2009 WI App 101). It is difficult to pin down exactly what Share alleges its trade secrets to be. However, Count III of the Amended Complaint – labeled "Misappropriation of Trade Secrets" – hints at the answer, alleging that Share has "maintained and developed

highly valuable trade secrets . . . and other proprietary information, including, but not limited to, reports compiling customer contact information, pricing, and sales history." (Am. Compl. ¶ 75).[6] Even if the court accepts as true Share's broad listing of trade secrets, it still appears that the non-disclosure provision covers much more than alleged trade secrets of Share as it lists "product formulations, manufacturing processes, financial information, marketing and sales plans, and materials developed for sales, marketing, promotion, and training" as the proprietary information protected in its non-disclosure provision. The breadth of the provision is fatal to Share's allegations of its breach because "even if a nondisclosure provision restricts disclosure of trade secret information, if it also restricts disclosure of information that is not a trade secret, § 103.465 requires a time limitation on that provision." *Friemuth*, 681 F. Supp. 2d at 990-91. "This is because when one part of the covenant is unreasonable, the entire covenant becomes unreasonable." *Id.* (citing Wis. Stat. § 103.465). Because a restriction on disclosure of non-trade secret information would be per se unreasonable if it lacked a time limitation, the remaining restriction is unenforceable as well. Consequently, even assuming part of Share's non-disclosure provision restricts disclosure of trade secrets, the entire non-disclosure covenant is unenforceable because it also restricts disclosure of non-

_____

[6] Share's memorandum in opposition also states that "information the Individual Defendants know about customers, business operations, and other confidential information of Share constitutes trade secrets." (Pl.'s Mem. in Opp'n 15). Paragraph 36 of the Amended Complaint states that the customer information to which the individual defendants were exposed includes: "the identity of purchasing requirements and habits of each customer, stocking requirements, product applications, uses and preferences, prices paid for particular products, and practices and procedures of customers and prospective customers." (Am. Compl. ¶ 36).

trade secret information. Therefore, the court is obliged to dismiss Share's breach of contract claim based on the confidentiality provision for failure to state a claim upon which relief may be granted.

## III. Misappropriation of Trade Secrets

In Count III of its complaint, Share claims defendants misappropriated its trade secrets in violation of Wisconsin's Uniform Trade Secrets Act which provides that actual or threatened misappropriation of trade secrets is prohibited. Wis. Stat. § 134.90(2); (Am. Compl. ¶ 74-91). Defendants challenge this claim, asserting that the complaint does not sufficiently allege the material to be a trade secret because the information is readily ascertainable and because the material does not derive independent economic value. Defendants also assert that Share has failed to sufficiently allege misappropriation.

To establish a trade secret, the plaintiff must show that the information "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" *and* that "[t]he information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances." Wis. Stat. § 134.90(1)(c).

In its March 11, 2010 order, the court informed Share that the information described in its submissions to the court were extremely vague and the court would not guess at which pieces of information constitute trade secrets. (*See* Order 12) (Docket #62). Share's amended complaint attempted to fix this problem.

-17-

For example, in Count III of its amended complaint, Share claims that it "maintained and developed highly valuable trade secrets . . . and other proprietary information, including, but not limited to, reports compiling customer contact information, pricing, and sales history." (Am. Compl. ¶ 75). Share's amended complaint also references a Customer Account List provided to the managers and the types of information included in these lists – a list of customers in the manager's area, contact/buyer name and phone number, address of the contact person, date of the last order, total year-to-date sales, the name of the sales representative who made the sale, and the name of the sales representative's manager. (Am. Compl. ¶ 23). Additionally, Share's memorandum in opposition further states that "information the Individual Defendants know about customers, business operations, and other confidential information of Share constitutes trade secrets." (Pl.'s Mem. in Opp'n 15). Paragraph 36 of the Amended Complaint states that the customer information to which the individual defendants were exposed includes: "the identity of purchasing requirements and habits of each customer, stocking requirements, product applications, uses and preferences, prices paid for particular products, and practices and procedures of customers and prospective customers." (Am. Compl. ¶ 36).

First, the court recognizes that "[a]t the complaint stage ... plaintiff is not and cannot be expected to plead its trade secrets in detail." *IDX Sys. Corp. v. Epic Sys. Corp.*, 165 F.Supp.2d 812, 816 (W.D. Wis. 2001), *aff'd in part & rev'd in part*, 285 F.3d 581 (7th Cir. 2002). However, the court finds Share's allegation that its trade

secrets consist of information known to the defendants about "business operations and other confidential information" is still too vague to put the defendants on notice of what they are accused of misappropriating. *See IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d at 583 ("A plaintiff must do more than just identify [the general information at issue] and then invite the court to hunt through the details in search of items meeting the statutory definition."); *see also Edgenet, Inc. v. GS1 AISBL*, --- F.Supp.2d ----, 2010 WL 3812798, *19 n. 24 (E.D. Wis. Sept. 27, 2010) (noting that trade secret allegations at the pleading stage require only particularity sufficient "to enable a defendant to delineate that which he is accused of misappropriating."). It is not easy to delineate what Share accuses the defendants of misappropriating with regard to information about business operations and other confidential information.

Thus, Share is left with only its data about customers, including specifically Share's Customer Account List, as trade secrets pled with enough specificity to survive this early stage of review. However, Share is still required to sufficiently allege that the customer lists meet Wisconsin's definition of a trade secret. Bare bones listings of customer information, such as names, addresses, phone numbers, and contact persons, have been routinely rejected by the Wisconsin courts as constituting a trade secret. *See Nalco Chem. Co. v. Hydro Technologies*, 149 F.R.D. at 693; *Gary Van Zeeland Talent, Inc. v. Sandas*, 267 N.W.2d at 247; *Abbott Laboratories v. Norse Chemical Corp.*, 33 Wis.2d 445, 147 N.W.2d 529 (Wis. 1967). Moreover, even when a customer list includes additional information, such as customer history and preferences, the list will not be found to meet Wisconsin's

definition of a trade secret if that information can be acquired by simply asking the customers when calling them to solicit their business. *Nalco*, 149 F.R.D. at 693-94.

However, this is not to say that all customer lists are automatically ineligible for trade secret protection. *See Minuteman, Inc. v. Alexander*, 147 Wis.2d 842, 845, 434 N.W.2d 773 (Wis. 1989) (holding that customer lists may be eligible for trade secret protection under Wis. Stat. § 134.90); *Abbott Laboratories,* 147 N.W.2d at 539 (suggesting that a customer list that incorporates complicated marketing data such as projections of the marketing needs of a customer or the customer's marketing habits may be a protected trade secret.).

Based on the above authority, the court finds that Share's Customer Account Lists are not trade secrets because the basic customer information contained in the reports is readily ascertainable by simply calling the customers and asking them for the information. However, it appears that Share also alleges other customer information to constitute trade secrets. As the court has previously noted, Share's memorandum in opposition to the motion to dismiss avers that customer information known to the individual defendants is a trade secret of Share. (Pl.'s Mem. in Opp'n 15). Though a plaintiff may not amend its pleadings by use of its briefs, Share's amended complaint lists the customer information to which the former employees were exposed – including "the identity of purchasing requirements and habits of each customer, stocking requirements, product applications, uses and preferences, prices paid for particular products, and practices and procedures of customers and prospective customers." (Am. Compl. ¶ 36). As the court is required to draw all

possible inferences in the claimant's favor at this stage of review, the court finds that Share has sufficiently alleged a plausible trade secret in the above customer information as it is not simply the bare bones listing of customer names and addresses, but includes more complicated and less readily ascertainable information that likely derives independent economic value.

However, even assuming Share has alleged a plausible trade secret in this regard, Share has still failed to sufficiently plead misappropriation of this information. To state a claim for misappropriation, Share was required to allege that the defendants used or disclosed the confidential information with knowledge that they acquired the information under circumstances giving rise to a duty to maintain its secrecy. Wis. Stat. § 134.90(2)(b)2.b. Share has alleged that the individual defendants were exposed to the confidential customer information. (Am. Compl. ¶ 36).[7] Share has also alleged that defendants Arensberg, Kuti, Berger, Miller, and Woren contacted Share customers. (Am. Compl. ¶¶ 45, 50).[8] However, Share has not sufficiently alleged that this contact with customers involved the improper possession or use of the customer information detailed above. Share does plead that it "believes" the defendants "have used or disclosed Share's confidential information" to contact the customers. (Am. Compl. ¶ 52). However, Share pleads

---

[7]Share alleges that the information was compiled and stored in a password-protected computer database. Share also claims that reports from the database were periodically compiled, including not only customer contact information, but also the dates of the customer's most recent sale and the pricing. (Am. Compl. ¶ 37).

[8]Share makes no such allegation as to individual defendants Bayer, Buttrey and Smith.

no other facts plausibly suggesting that solicitation of the customers involved improper use of the customer information deemed to be a trade secret. All that Share sufficiently alleges is that the individual defendants had access to the confidential information.[9] Accordingly, the court finds that Share's amended complaint is insufficient to survive a motion to dismiss on its misappropriation of trade secrets claim.

## IV. Tortious Interference with Existing and Prospective Contractual Relationships

To prevail on a tortious interference with contract claim under Wisconsin law, a plaintiff must satisfy five elements: (1) an actual or prospective contract existed between the plaintiff and a third party; (2) the defendant interfered with that contract or prospective contract; (3) the interference was intentional; (4) the interference caused the plaintiff to sustain damages; and (5) the defendant was not justified or privileged to interfere. *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999).

In Count IV of its amended complaint, Share alleges that Momar induced the individual defendants to breach their employment agreements. Given that the customer non-solicit and non-disclosure clauses in the contracts that Momar

_____

[9]The court notes that Share makes specific allegations about Pat Saindon ("Saindon"), a manager who was solicited to work for Momar, but who is not named as a defendant in this action, and his use of Share customer lists, contact information, customer buying habits, and pricing information while working for Momar. Share claims that defendant Berger had full knowledge of Saindon's conduct and permitted Saindon to use Share's information, as he was Saindon's manager at Momar. (Am. Compl. ¶ 54). Though this allegation certainly meets the level of plausibility necessary for surviving a motion to dismiss as it relates to Saindon's misappropriation of trade secrets, it does not sufficiently state a claim against Berger because it does not claim that Berger himself used the trade secrets of Share.

allegedly induced the individual defendants to breach are unenforceable, soliciting the individual defendants to breach those contractual provisions would not constitute tortious interference with contract because the tort requires the existence of an actual contract. *IDS Life Ins. Co. v. Royal Alliance Assocs.*, 266 F.3d 645, 649 (7th Cir. 2001) (applying analogous Illinois law). As such, the plaintiff does not state a claim upon which relief may be granted as to its tortious interference claims stemming from breach of the customer non-solicit and non-disclosure provisions.

In the context of the employee non-solicit provision, it appears that Share has not sufficiently alleged tortious interference by Momar.[10] The only allegation the court could possibly construe as stating a claim in this respect is that "defendant Momar has told at least on[e] Share employee, Pat Saindon, not to 'worry' about his Agreement with Share and that Momar would provide the employee with legal representation if Share sued to enforce its Agreement." (Am. Compl. ¶ 94). Yet, Share also alleges this statement by Momar was made in response to Saindon's comments regarding only an agreement with Share prohibiting him from calling on his Share customers for one year. (Am. Compl. ¶ 53). Therefore, the court finds that Share has not pled specific factual information stating a claim for relief based on tortious interference with the contractual provision prohibiting solicitation of Share employees.

---

[10]The court assumes, without finding, that the employee non-solicit provision is divisible from the customer non-solicit and non-disclosure provisions, thereby not rendering it automatically unenforceable. *See Frank D. Gillitzer Elec. Co., Ltd. v. Andersen,* 323 Wis.2d 754, 780 N.W.2d 542 (Wis. Ct. App. 2010).

Lastly, in Count V of its amended complaint, Share alleges that all defendants have tortiously interfered with prospective contracts with customers. The defendants counter that Share has failed to sufficiently allege the protectible "economic relationships" necessary for the tort. Specifically, the defendants argue that mere expectation of receiving future business from a third party – as opposed to an actual commitment – is not a legally protectible interest. This tort is difficult to succeed upon because, to satisfy the first element of the tort, a plaintiff must be able to show that prospective contractual relationships with customers are "sufficiently certain, concrete, and definite." *Shank*, 192 F.3d at 685. Thus, the defendants are correct that proof of the expectation of receiving future business is not enough to state a claim.

Share alleges that its sales are rarely one-time sales and that customers order products from Share on a regular basis. (Am. Compl. ¶ 47). Share further claims that its sales staff "knows how often each customer will need to reorder and contacts the customer at that time to confirm the next shipment." (Am. Compl. ¶ 47). Share also attaches a sampling of sales records to its amended complaint showing the regularity with which the customers placed orders with Share. (Am. Compl. ¶ 47, Ex. R) (Docket #68-18). The court finds that these specific factual allegations are sufficiently plausible to state a claim upon which relief may be granted. The sales records demonstrate that an existing contractual relationship likely existed between the parties and it is reasonable to infer that the customers viewed these purchases as a contractual relationship. As for the certainty and definiteness of the prospective

contractual relationship, the court finds that the plaintiff has just crossed the line from alleging an expectation of future business from its customers to a prospective contractual relationship because of its allegation that it simply confirms the next shipment with customers, rather than induces them to buy more products. This suggests that the customers intend to enter into future purchase contracts with Share. That being said, a motion to dismiss tests the sufficiency of the complaint, not the merits of a case. It may well be that the defendants' conduct could be fairly categorized as competition rather than as a tort. However, Share has sufficiently stated a claim in this respect and, therefore, the court will allow Count V to survive the motion to dismiss.

## CONCLUSION

After lengthy discussion, the court finds that plaintiff has failed to state a claim as to Count I, Breach of Contract by the Managers, except as to defendant Berger and his alleged breach of the employee non-solicit provision. Plaintiff has also failed to state a claim as to Count II, Breach of Contract by the Sales Reps, because the non-disclosure provision at issue is unreasonable for lack of a time limitation and, therefore, unenforceable. Count III of the amended complaint also fails to state a claim due to lack of sufficient allegations of a protected trade secret and misappropriation. As to Count IV, tortious interference of an existing contract occurs only when an actual contract exists. Because two of Share's non-compete provisions are unenforceable, plaintiff does not state a claim for tortious interference with those provisions. Furthermore, Share failed to sufficiently allege tortious interference of

the employee non-solicit provision, and this claim will not survive the motion to dismiss.  On the other hand, the court finds that Count V alleges sufficient facts to state a plausible claim for relief and, thus, it survives dismissal.

The court recognizes that some of its findings result in a harsh reality for Share.  However, the court reminds Share that it is not prevented from protecting its interest in maintaining its employees and its confidential information, but it must do so through a valid restrictive covenant in compliance with Wis. Stat. § 103.465. Furthermore, the court will dismiss all claims with prejudice, excluding Count V and the one claim under Count I against defendant Berger for breach of the employee non-solicit provision. Though leave to amend should be freely given when justice so requires, Fed. R. Civ. P. 15(a)(2), dismissal with prejudice remains within the discretion of the district court. *See James Cape & Sons Co. v. PCC Const. Co.*, 453 F.3d 396, 401 (7th Cir. 2006).  Given the discretion of the court in this matter, and in light of the one amended complaint and three pre-answer motions already decided by the court, two of which afforded the plaintiff ample opportunity to amend its complaint to state a claim, the court finds the wiser exercise of its discretion would be to dismiss with prejudice.  *See Fannon v. Guidant Corp.,* 583 F.3d 995, 1002 (7th Cir. 2009) (teaching that a reasonable opportunity to construct a complaint that states a claim, and failing to do so, is grounds enough for exercise of a court's discretion).

Accordingly,

**IT IS ORDERED** that the defendants' Joint Motion to Dismiss Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) (Docket #74) be and the same is hereby **GRANTED** in part and **DENIED** in part;

**IT IS FURTHER ORDERED** that Count One of the plaintiff's Amended Complaint (Docket #68), inasmuch as it does not state a claim against defendant Berger for breach of the contractual provision regarding employee non-solicitation, be and the same is hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Counts Two, Three, Four, and Six of the plaintiff's Amended Complaint (Docket #68) be and the same are hereby **DISMISSED with prejudice**; and

**IT IS FURTHER ORDERED** that defendants' Joint Motion to Dismiss (Docket #50) be and the same is hereby **DENIED** as moot.

Dated at Milwaukee, Wisconsin, this 26th day of January, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge